OPINION
{¶ 1} This matter is before the court on an administrative appeal from the judgment of the Trumbull County Court of Common Pleas affirming the decision of State Pharmacy Board of Ohio (appellee) denying Donald Robert Sutton's (appellant) request to sit for its jurisprudence examination and have his pharmacist's license reinstated. For the reasons herein, we reverse the judgment of the trial court and the matter is remanded. *Page 2 
 {¶ 2} Sutton, a pharmacist, was originally licensed by the Board in 1979. In October of 1999, the Board issued a citation against Sutton alleging numerous statutory violations relating to Sutton's pharmacy practice. After an administrative hearing, on June 14, 2000, the Board issued an order suspending Sutton from the practice of pharmacy indefinitely. The Board's suspension order set forth the following conditions:
 {¶ 3} "(B) Two years after the effective date of this Order, the Board will reinstate Donald Robert Sutton's license to practice pharmacy in Ohio provided that:
 {¶ 4} "(1) Donald Robert Sutton obtains, within 90 days of the effective date of this Order, a full psychiatric evaluation by a licensed psychiatrist or psychologist that includes a recommended treatment plan for anger control and immediately submits to the Board documentation from the psychiatrist or psychologist of compliance with this provision.
 {¶ 5} "(2) Donald Robert Sutton submits to this Board, before two years from the effective date of this Order, the final report of the psychiatrist or psychologist regarding Donald Robert Sutton's compliance with the treatment plan and verification of his fitness for readmission into the practice of pharmacy.
 {¶ 6} "(3) Donald Robert Sutton takes and successfully completes the jurisprudence Examination offered by the Board. If Donald Robert Sutton has not successfully completed the examination prior to two years from the effective date of this Order, his license will be reinstated after this condition has been achieved."
 {¶ 7} Sutton subsequently appealed the order and, on June 19, 2000, the trial court suspended the Board's order pursuant to R.C. 119.12. After hearing Sutton's appeal, the trial court affirmed the Board's order on March 6, 2001. This court later *Page 3 
affirmed the Board's order in Sutton v. Ohio State Bd. of Pharmacy (Apr. 30, 2002), 11th Dist. Nos. 2001-T-0030, 2001-T-0031, and 2001-T-0032, 2002 Ohio App. LEXIS 2051. Next, on September 11, 2002, the Supreme Court of Ohio declined jurisdiction to hear the matter, Sutton v. OhioState Bd. of Pharmacy, 96 Ohio St.3d 1495, 2002-Ohio-4534, and, on October 23, 2002, the Court denied Sutton's motion for reconsideration.Sutton v. Ohio State Bd. of Pharmacy, 97 Ohio St.3d 1414,2002-Ohio-5601.
 {¶ 8} In January of 2004, counsel for Sutton initiated contact with the Board regarding the licensure reinstatement process. The Board initially sent Sutton a letter indicating he would be permitted to take the jurisprudence examination. However, in March of 2004, the Board sent a letter advising Sutton that taking the examination would be futile because he failed to comply with conditions (B)(1) and (B)(2) of its June 14, 2000 order.
 {¶ 9} Sutton disputed the Board's position and, on October 6, 2004, sent a final psychological report compiled by Terence Heltzel, Ph.D., a clinical psychologist. Dr. Heltzel reported Sutton had first contacted his office on November 9, 2001, before the legally effective date of the Board's order, and was subsequently interviewed on six separate occasions between 2002 and 2004. Dr. Heltzel's report stated that he initially deferred preparing an evaluation because he was unclear what was necessary for compliance with the Board's conditions. Dr. Heltzel further reported that, after Sutton had taken certain diagnostic examinations and participated in numerous consultations, Sutton had no diagnosable condition and did not require treatment for anger control. Dr. Heltzel underscored that the Board's order seemed to require a report and a treatment plan for a disorder which, in his professional opinion, Sutton did not possess. *Page 4 
Accordingly, the doctor concluded he was "unable to comply with the requirements of the Pharmacy Board as written."
 {¶ 10} Notwithstanding the foregoing submission, the Board convened and denied Sutton's request to sit for the jurisprudence examination on November of 2004. After learning of the Board's decision, Sutton's counsel contacted the Board via letter in March and April of 2005, contesting the Board's decision. On June 7, 2005, Sutton, through counsel, was allowed to present his arguments to the Board regarding his request for reinstatement. On June 16, 2005, however, the Board denied Sutton's request. In its written decision, the Board explained Sutton's failure to comply with the conditions, particularly the timeframes, set forth in the original order prevented alteration of its June 14, 2000 order and thus precluded the reinstatement of his pharmacy license.
 {¶ 11} Sutton subsequently filed a notice of appeal with the Trumbull County Court of Common Pleas. The court considered the parties' arguments and concluded that, although the June 16, 2005 decision was an "adjudication" under R.C. 119.01(D) and therefore a final, appealable order pursuant to R.C. 119.12, Sutton's position was unavailing. The court specifically determined:
 {¶ 12} "* * * [i]t remains clear that Appellant failed to comply with those * * * parts of the Order requiring the submission of documentation showing that Appellant had undergone a full psychiatric evaluation within 90 days of the effective date of [the] Order, and the submission of a final report from the psychiatrist or psychologist within two years from the effective date of [the] Order verifying Appellant's fitness for readmission into the practice of pharmacy. The only documentation appellant ever *Page 5 
submitted to the Board regarding a psychiatric evaluation was a report first delivered to Appellee on October 6, 2004. As Appellee points out, the stay of the Board's original Order expired on September 11, 2002; i.e., that date the Ohio Supreme Court declined jurisdiction, and the Order thus took effect that date. Appellant submitted nothing to appellee within 90 days of this date, and the report ultimately submitted to Appellee was first delivered more than two years from this date. It is, therefore, clear that appellant failed to comply with Appellee's original Order and the Court therefore concludes that Appellee's decision denying appellant permission to sit for the jurisprudence examination was supported by reliable, probative, and substantial evidence and was in accordance with the law."
 {¶ 13} Sutton now appeals the trial court's decision asserting two assignments of error. We shall first address Sutton's second assigned error, which reads:
 {¶ 14} "The trial court erred in concluding that appellant failed to comply with lawful conditions for reinstatement of his license and that the State Pharmacy Board's June 16, 2005 order was in accordance with law."
 {¶ 15} Under this assignment of error, Sutton asserts the trial court abused its discretion in affirming the Board's order based upon "irrelevant and immaterial timing conditions" set forth in the original June 14, 2000 order.
 {¶ 16} Sutton's argument attacks the legal import and validity of certain features of the conditions imposed by the Board in its original order. If appellant believed the conditions of the original order to be improper, legally or practically, he should have challenged their propriety during his original appeal. He did not. *Page 6 
 {¶ 17} The general rule of the claim preclusion component of the doctrine of res judicata holds:
 {¶ 18} "A valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action."Grava v. Parkman Twp. (1995), 73 Ohio St.3d 379, at syllabus.
 {¶ 19} The foregoing principle is applicable to the orders of administrative agencies when the order is "`of a judicial nature and where the parties have had an ample opportunity to litigate the issues involved in the proceeding. (* * *)'" Set Products v. Bainbridge Twp. Bd.of Zoning Appeals (1987), 31 Ohio St.3d 260, 263, quoting Superior'sBrand v. Lindley (1980), 62 Ohio St.2d 133, at syllabus. That is, the doctrine of res judicata applies to adjudicative orders but not ministerial acts of administrative agencies. Greene v. Conrad (Aug. 21, 1997), 10th Dist. No. 96APE12-1780, 1997 Ohio App. LEXIS 3714, at 8-9.
 {¶ 20} It is undisputed the Board's original June 14, 2000 order, which contained the conditions of which Sutton now complains, was adjudicative. Appellant saw the matter through the full appellate process but at no time challenged the validity or qualitative legal impact of the timing conditions within the original order. These issues are now res judicata and thus Sutton is precluded from raising the argument at this juncture.[1] We shall nevertheless review the foundation of the trial court's decision for *Page 7 
error.
 {¶ 21} In an appeal from an administrative agency's order under R.C. 119.12, the standard of review for an appellate court is limited:
 {¶ 22} "* * * a reviewing trial court is bound to uphold the order if it is supported by reliable, probative, and substantial evidence, and is in accordance with law. * * * The appellate court's review is more limited than that of the trial court. While it is incumbent on the trial court to examine the evidence, this is not the function of the appellate court. The appellate court is to determine only if the trial court has abused its discretion, i.e., being not merely an error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency. Absent an abuse of discretion on the part of the trial court, a court of appeals may not substitute its judgment for those of the [administrative agency] or a trial court. Instead, the appellate court must affirm the trial court's judgment." (Citations omitted.)Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621.
 {¶ 23} An abuse of discretion connotes more than an error of law or judgment and implies the court's actions were unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. Put differently, a court abuses its discretion when its judgment neither comports with reason nor the record. State v. Ferranto (1925),112 Ohio St. 667, 676-678.
 {¶ 24} Here, the trial court premised its affirmance of the Board's June 16, 2005 order on two bases: (1) Sutton's failure to obtain a full psychiatric evaluation and treatment plan for anger control within 90 days of the effective date of the June 14, 2000 order and immediately submit to the Board documentation demonstrating compliance *Page 8 
with this condition and (2) Sutton's failure to submit a final report from a psychiatrist or psychologist regarding his mental fitness within two years of the effective date of the June 14, 2000 order. With respect to the latter, the trial court determined the order became effective on September 11, 2002, i.e., the date the Supreme Court of Ohio declined jurisdiction over appellant's discretionary appeal.
 {¶ 25} R.C. 119.12 provides, in relevant part:
 {¶ 26} "The filing of a notice of appeal shall not automatically operate as a suspension of the order of an agency. If it appears to the court that an unusual hardship to the appellant will result from the execution of the agency's order pending determination of the appeal, the court may grant a suspension and fix its terms. If an appeal is taken from the judgment of the court and the court has previously granted a suspension of the agency's order as provided in this section, such suspension of the agency's order shall not be vacated and shall be given full force and effect until the matter is finally adjudicated. * * *"
 {¶ 27} It is undisputed that, on June 19, 2000, the trial court suspended the Board's original order pursuant to R.C. 119.12. The order was thereby stayed until the final adjudication of the appeal.
 {¶ 28} Although the Supreme Court declined jurisdiction over Sutton's discretionary appeal on September 11, 2002, Sutton immediately filed a motion for reconsideration in the Court. That motion was ultimately denied on October 23, 2002. Sup.Ct.Prac. R. XI allows the Supreme Court "`to correct decisions which, upon reflection, are deemed to have been made in error.'" Buckeye Comm. Hope Found. v. Cuyahoga Falls (1998),82 Ohio St.3d 539, 541, quoting, State ex rel. Huebner v. W. *Page 9 Jefferson Village Council (1995), 75 Ohio St.3d 381, 383. To the extent the court has the ability to reverse itself through the reconsideration process, it is reasonable to conclude that a matter has not been "finally adjudicated" until the judgment on reconsideration is entered.
 {¶ 29} Applying this reasoning to the instant matter, Sutton's original appeal was "finally adjudicated" pursuant to R.C. 119.12 on October 23, 2002. Sutton consequently had until October 23, 2004 to submit a final psychological report regarding his fitness to practice pharmacy to be in compliance with the Board's order regarding this condition. He submitted the report on October 5, 2004. We consequently hold Sutton's compliance with condition (B)(2) was timely and thus the trial court's conclusion to the contrary is erroneous.
 {¶ 30} With respect to the second prong of the trial court's decision, it is clear that Sutton failed to strictly comply with the condition set forth under subsection (B)(1). That is, Sutton failed to demonstrate he obtained a full psychiatric evaluation with a recommended treatment plan within 90 days of the effective date of the order and submit it to the Board to show compliance with the condition at issue. However, despite this problem, the information set forth in Dr. Heltzel's final report indicates Sutton complied with the substance of the condition. Specifically, Dr. Heltzel's report reveals Sutton contacted his office first on November 9, 2001, and Sutton was subsequently interviewed on December 14, 2001, January 31, 2002, May 19, 2004, June 30, 2004, July 27, 2004, and September 20, 2004. Sutton's first contact with the doctor and his first interview occurred well before the effective date of the order. *Page 10 
 {¶ 31} Further, based upon multiple interviews and his analysis of diagnostic tests, Dr. Heltzel concluded Sutton did not exhibit any "clinically significant problematic anger." The doctor therefore determined he "could not properly develop a treatment plan for a problem which, based on [his] assessment, did not exist." Given Dr. Heltzel's professional assessment, it would have been impossible for Sutton to obtain a full psychiatric evaluation with a recommended treatment plan within 90 days of the order. We recognize that nothing prevented Sutton from requesting Dr. Heltzel to submit proof to the Board that Sutton had contacted him within the proper time frame set forth in the Board's order; however, such notification still would have fallen below strict compliance with condition (B)(1) because the doctor had not completed his evaluation and, in any event, would have been unable to recommend a treatment plan.
 {¶ 32} In our view, the circumstances of this case compel the conclusion that, to the extent it was possible, Sutton complied with the spirit and general substance of condition (B)(1) of the Board's original order. Sutton actively sought out Dr. Helzel's services before the effective date of the order. He therefore obtained psychological help from a licensed psychologist within 90 days of the effective date of the order. Further, after many interviews and tests, Dr. Heltzel concluded Sutton had no anger control issues. It was therefore impossible for Dr. Heltzel to submit a full evaluation to the Board with a treatment plan for anger control. Nevertheless, upon completion of a "full evaluation," Dr. Heltzel "immediately" submitted a report to show Sutton complied with the Board's order.
 {¶ 33} We recognize that the Board wished Sutton to participate in an anger control program and desired an evaluation that reflected the necessity of such *Page 11 
treatment. However, a licensed clinical psychologist, after a thorough review and formal evaluation of Sutton, concluded no such treatment was necessary. Although the Board may have been dissatisfied with the results of Sutton's evaluation, its dissatisfaction is immaterial. In our view, it would be unfair and unreasonable to preclude Sutton's reinstatement and deny him the opportunity to take a professional examination because the psychological evaluation he obtained from a licensed mental health professional did not correspond to the peculiar, if not arbitrary, expectations of the Board.
 {¶ 34} We, therefore, hold the trial court abused its discretion in affirming the Board's June 16, 2005 order. In affirming this order, the trial court essentially concluded Sutton should have found a way to appease the Board by obtaining an evaluation and treatment plan within 90 days of the effective date of the original order for a psychological condition that, according to an objective professional assessment, he did not have. Such a demand is unjust, arbitrary, and unreasonable. The record demonstrates Sutton complied with the substance of conditions (B)(1) and (B)(2) and the trial court's decision to the contrary is both unreasonable and arbitrary. The trial court's judgment is therefore reversed and the Board's order concluding he failed to comply with conditions (B)(1) and (B)(2) of the original order is vacated. We consequently hold Sutton has complied with conditions (B)(1) and (B)(2) and is eligible to sit for the jurisprudence examination.
 {¶ 35} Sutton's second assignment of error is well-taken.
 {¶ 36} Sutton's first assignment of error asserts:
 {¶ 37} "The trial court erred in failing to vacate the state pharmacy Board's June 16, 2005 order." *Page 12 
 {¶ 38} Under this assigned error, Sutton contends he was not afforded procedural due process in compliance with R.C. 119.07 and R.C. 119.09
vis-á-vis the proceedings leading to the June 2005 order. He further argues the Board lacked jurisdiction under R.C. 4729.16(E) to require him to undergo an anger control treatment plan as a precondition to his reinstatement. Given our resolution of Sutton's second assignment of error, his arguments under his first assignment of error are moot.
 {¶ 39} For the reasons discussed above, the second assignment of error is well-taken which renders his first assignment of error moot. Thus, the judgment of the Trumbull County Court of Common Pleas is reversed and the matter is remanded with instructions to vacate the June 16, 2005 order of the Board.
 {¶ 40} It is the further order of this court that appellee is assessed costs herein taxed. The court finds there were reasonable grounds for this appeal.
MARY JANE TRAPP, J., concurs,
TIMOTHY P. CANNON, J., concurs in judgment only with Concurring Opinion.
[1] It bears noting that Sutton also attacks the Board's jurisdiction under R.C. 4729.16(E) to require him to undergo an anger control treatment plan as a precondition to his reinstatement. Although it is questionable whether the condition requiring Sutton to undergo anger control treatment is valid, its inclusion did not affect the Board's subject matter jurisdiction or authority to set conditions for his reinstatement. At most, the condition rendered the order voidable, i.e., "invalid, irregular, or erroneous." See, e.g., State v. Simpkins,117 Ohio St.3d 420, 423, 2008-Ohio-1197. Accordingly, like the other conditions of the original order, Sutton was required to raise this issue on his direct appeal.